2014 COA 42

**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Raymond L. MARSHALL, Defendant–Appellee.**

Court of Appeals No. 12CA1648

Colorado Court of Appeals, Div. V.

Announced April 10, 2014

§ 24–51–1105, C.R.S.2013.

Daniel May, District Attorney, Robyn Cafasso, Chief Deputy District Attorney, Alan Anderson, Deputy District Attorney, Doyle Baker, Deputy District Attorney, Colorado Springs, Colorado, for Plaintiff–Appellant

Haddon, Morgan and Foreman, P.C., Norman R. Mueller, Denver, Colorado, for Defendant–Appellee

Opinion by JUDGE BERNARD

¶1 A grand jury indicted Raymond L. Marshall, the defendant here, in November 2009. The indictment alleged that he had committed a series of theft-and fraud-related crimes.

¶2 In February 2012, the prosecution filed a second case by information that contained numerous similar counts. The prosecution moved to join the two cases. But defendant objected, and the court denied the prosecution's motion.

¶3 A jury acquitted defendant in the first case. He then asked the court to dismiss the second case because the charges in that case should have been joined with the first case. The court agreed with defendant's argument and granted his request.

¶4 This appeal asks this question: Does defendant's successful objection to the prosecution's motion to join the two cases bar defendant's subsequent motion to dismiss the second case because it was not joined with the first? We conclude, under the circumstances of this case, that the answer to this question is "yes." As a result, we reverse the trial court's judgment dismissing this case, and we remand it to the trial court to reinstate the charges.

## I. Background

¶5 In the first case, a grand jury indicted defendant for securities fraud, theft, conspiracy, and organized crime. These charges involved transactions between defendant and an investor. The trial court later dismissed the organized crime charges.

¶6 In March 2011, while the first case was pending trial, the prosecution received a tip

that led it to open a second investigation into defendant's business activities. It informed defendant's counsel of this investigation in July 2011, stating that it intended to file new charges against defendant.

¶ 7 In September 2011, the prosecution filed a motion to continue defendant's trial. This motion stated that a prosecution expert and one of the prosecutors had encountered serious health problems. But it also referred to the new investigation, stating that the prosecutors' "goal" was to "complete the investigation and make a charging decision" within ninety days. The motion alleged that, if the court denied the request for a continuance, "the new and ongoing investigation and any subsequent filing of charges will be delayed."

¶ 8 During a hearing on this motion, the prosecution stated that it would take time to file the new charges because it had to sort through the records of about 80 limited liability companies (LLCs) and 100 bank accounts that defendant controlled. The court granted the motion, and it continued the trial to a date in mid-March 2012.

¶ 9 The prosecution filed the second case in mid-February 2012, about one month before the date of the trial in the first case. Five days later, defendant filed a document stating that the charges in the second case involved the same acts as the ones at issue in the first case. As a result, he contended, the mandatory joinder rule found in section 18–1–408, C.R.S.2013, and double jeopardy principles barred the prosecution of both cases. He further proposed that, because the prosecution could not proceed with both cases, it should dismiss the first case and proceed on the second.

¶ 10 The prosecution rejected defendant's proposal at a hearing. (One of the reasons was that, if it dismissed the first case, it would lose some of the charges in that case because of the "statute of limitations.") The trial court responded that, although it was not entering a ruling, the prosecution was "playing with fire" because the trial of the first case could "have dire consequences" for the second case.

¶ 11 A week later, relying on Crim. P. 8(a)(2) (permissive joinder), Crim. P. 13 ("[t]rial [t]ogether of [i]ndictments, [i]nformations"), and Crim. P. 14 ("[r]elief from [p]rejudicial [j]oinder"), the prosecution filed a motion that asked the court to join the second case with the first. The motion stated that (1) the two cases were "of the same or similar character"; (2) they were "part[ ] of a larger scheme or plan of action"; (3) defendant used 80 LLCs and 100 bank accounts "as a mechanism" to commit the alleged crimes in both cases; (4) there were "many" witnesses who "overlap[ped]" between the two cases; (5) joining the two cases for trial would not prejudice defendant; (6) joining the two cases would require the court to continue the mid-March 2012 trial; (7) a trial involving both cases would take "approximately three months"; and, (8) if the court did not join the two cases, the prosecution intended to present evidence from the second case in the trial of the first case as res gestae.

¶ 12 Defendant objected. He argued that (1) the first case had been pending for two-and-one-half years; (2) the second case was "a functional amendment of the indictment" in the first case, which would violate Crim. P. 6.8; and (3) joining the cases would delay the trial, and he was "ready to go."

¶ 13 The trial court then ruled, stating that it "den[ied] the motion" to join the two cases, and it "den[ied] the motion to introduce res gestae evidence." It did not explain its reasoning for these decisions.

¶ 14 The jury acquitted defendant in the first case. In mid-May 2012, he filed a motion to dismiss the second case. He relied on several contentions, asserting that the second case was barred by (1) section 18–1–408(2), the mandatory joinder statute, because the second case involved the "same criminal episode" as the first case; (2) double jeopardy principles; (3) the doctrines of claim preclusion and issue preclusion; (4) Crim. P. 6.8(a), which prohibits substantive amendments of indictments; and (5) due process, because the prosecution's conduct, "[w]hether through affirmative misconduct or plain negligence" and "claim splitting shenanigans" had forced defendant "to endure years of

unnecessary anxiety," "caused his financial ruin," and "devast[ated] his personal and professional life."

¶ 15 In late May 2012, the prosecution filed an amended information in the second case. Then, in late June 2012, it filed a written response to defendant's motion to dismiss the second case. The court held a hearing on defendant's motion two days later.

¶ 16 After listening to testimony and argument, the court granted defendant's motion to dismiss the second case. It stated that:

- the prosecution did not file the second case until about thirty days before the trial in the first case;
- it did not file the motion to join the two cases until nineteen days before the trial in the first case;
- the second case was subject to mandatory joinder with the first case because both cases arose from "the same criminal episode";
- the prosecution's joinder motion was "ineffective" because it moved for joinder under the "permissive" joinder rule rather than the mandatory joinder rule;
- defendant's opposition to the permissive joinder motion did not waive his mandatory joinder rights; and
- "fundamental fairness require[d]" that the two cases be tried together because they were "inextricably intertwined."

¶ 17 The trial court expressly declined to rule on defendant's due process argument, although the court stated that it had "serious reservations about whether there [were] due process violations in this case."

## II. Analysis

¶ 18 The prosecution does not challenge the trial court's conclusion that the two cases were subject to mandatory joinder rather than permissive joinder. But it *does* challenge the court's conclusion that section 18–1–408(2) bars prosecution of the second case. It submits that defendants should not be able to oppose the prosecution's effort to join two cases and then later assert that the prosecution cannot proceed with the second case because the court did not join it with the first. We agree.

¶ 19 The issue whether a trial court properly dismissed a criminal case under Crim. P. 8(a)(1) and section 18–1–408(2) is a mixed question of law and fact. *See People v. Carey*, 198 P.3d 1223, 1227–30 (Colo.App. 2008) (implicitly recognizing that, in a mandatory joinder analysis, a trial court's factual findings require support in the record and interpretation of the statute is reviewed de novo). Thus, we review legal questions de novo and defer to factual findings that the record supports. *See id.*; *People v. Arroya*, 988 P.2d 1124, 1129 (Colo.1999).

¶ 20 Crim. P. 8(a)(2) authorizes "permissive joinder." It provides that "[t]wo or more offenses *may* be charged in the same indictment or information" if they are "of the same or similar character" or "based on two or more acts or transactions connected together or constituting parts of a common scheme or plan." (Emphasis added.)

¶ 21 Crim. P. 8(a)(1) and section 18–1–408(2) concern "mandatory" joinder. They require that all offenses "based on the same act or series of acts arising from the same criminal episode" that are "actually known to the [prosecutor] at the time of commencing the prosecution ... be prosecuted ... in a single prosecution."

¶ 22 "The purposes of [mandatory] joinder are to protect the accused against the oppressive effect of sequential prosecutions based on conduct occurring during the same criminal episode and to conserve judicial and legal resources." *Jeffrey v. Dist. Court*, 626 P.2d 631, 637 (Colo.1981).

¶ 23 Our supreme court has stated that "[i]n the event the accused objects to ... [joinder][,] and the court denies the prosecutor's motion [to join the related cases], section 18–1–408(2) would not bar sequential prosecutions." *Id.* at 638. It explained that, under those circumstances, the failure to join two related cases results from the "accused's opposition to a joint prosecution[,]" and not from "prosecutorial neglect." *Id.*

¶ 24 We recognize that the trial court described this language from *Jeffrey* as dictum. Assuming, without deciding, that it is dictum, we nonetheless find it persuasive, particular-

ly because courts in other states have reached the same conclusion. *See Commonwealth v. Saunders,* 483 Pa. 29, 394 A.2d 522, 525 (1978)("The defendant, by opposing the [prosecution's] motion to [join two cases], has waived any allegations of prejudice or inconvenience resulting from the prospect of multiple trials."); *accord Commonwealth v. Stewart,* 493 Pa. 24, 425 A.2d 346, 349 (1981); *Commonwealth v. Failor,* 564 Pa. 642, 770 A.2d 310, 314–15 (2001). *See also State v. Haga,* 735 P.2d 44, 47 (Utah 1987)(defendant's opposition to the prosecution's joinder motion waived his joinder rights); *State v. Riordan,* 86 N.M. 92, 519 P.2d 1029, 1030 (N.M.Ct.App.1974)(defendant's motion for severance waived his right to joinder); II ABA Standards for Criminal Justice, Joinder and Severance, Standard 13–2.3(c) (2d ed. 1980)("A defendant who has been tried for one offense may thereafter move to dismiss any additional offense based upon the ... same criminal episode, *unless a motion for joinder of these offenses was previously denied.*" (emphasis added)). *Accord* Unif. R.Crim. P. 471(c)(1)-(2) (1987) (Court shall dismiss related crime *"unless ...* defendant knew [he] was charged with the crime" and "failed to move for joinder of the charges; [or] a motion for joinder of the charges was previously denied." (emphasis added)). *But cf. State v. Shields,* 280 Or. 471, 571 P.2d 892, 895–97 (1977) (The defendant's opposition to joinder motion that was based solely on "untimeliness" does not waive his right to be free from multiple prosecutions, where prosecution moved to join charges on the day of trial and defendant was forced to choose between "going to trial unprepared on additional charges and waiving his right to be free from multiple prosecutions.").

■ ¶ 25 Mandatory joinder rules are not a "shield ... from properly initiated prosecutions." *Commonwealth v. Gimbara,* 835 A.2d 371, 377 (Pa.Super.Ct.2003) (citing *Commonwealth v. Beatty,* 500 Pa. 284, 455 A.2d 1194, 1198 (1983) ("It is fundamental that a rule of law should not be applied [in a manner that] fails to serve the purposes for which it was designed.")).

■ ¶ 26 We conclude that defendant waived his joinder rights under Crim. P.

8(a)(1) and section 18–1–408(2) for the following reasons.

¶ 27 First, defendant objected to the prosecution's motion to join the two cases. *See Jeffrey,* 626 P.2d at 638; *Saunders,* 394 A.2d at 525; *Haga,* 735 P.2d at 47; ABA Standard 13–2.3(b), commentary.

¶ 28 Second, the trial court denied the prosecution's motion. *See Jeffrey,* 626 P.2d at 638; ABA Standard 13–2.3(c) ("A defendant who has been tried for one offense may thereafter move to dismiss any additional offense based upon the ... same criminal episode, *unless a motion for joinder of these offenses was previously denied.*" (emphasis added)); Unif. R.Crim. P. 471(c)(1)-(2).

¶ 29 Third, the purposes of the joinder rules are not served if defendants can successfully oppose joinder of two cases, and courts subsequently dismiss the second case on the grounds that it should have been joined with the first. *See Jeffrey,* 626 P.2d at 638 ("[The] rule [is intended to] protect[ ] ... 'the ethical and diligent prosecutor from technical, arbitrary bans to subsequent prosecution of companion offenses discoverable too late to permit consolidation.' ")(quoting ABA Standard 13–2.3(c), commentary); *Gimbara,* 835 A.2d at 377.

■ ¶ 30 In reaching our conclusion, we reject defendant's contention, based on Crim. P. 6.8, that the second case was "a functional amendment of the indictment in the first case." Crim. P. 13 clearly authorizes a court to join "two or more *indictments* [or] informations" if they "could have been joined in a single *indictment* [or] information[.]" (Emphasis added.) *See United States v. Bellomo,* 954 F.Supp. 630, 651 (S.D.N.Y. 1997)("The [c]ourt has the power, under Fed. R.Crim.P. 13 [which is similar, although not identical, to Crim. P. 13] to order that 'two or more indictments ... be tried together' as long as all of the charges against all of the defendants could have been brought in one indictment.").

¶ 31 And we will not consider defendant's assertion that the prosecution's joinder motion was "untimely." This assertion raises due process considerations. Although the trial court stated that it entertained "serious

reservations about whether there [were] due process violations in this case," it expressly declined to make any findings of fact or reach any conclusions of law concerning defendant's due process contention. *See People v. McClure*, 756 P.2d 1008, 1011 (Colo.1988) ("Whether an individual's rights to due process and fundamental fairness have been violated by prosecutorial misconduct to an extent warranting dismissal depends on the circumstances of each case."); *People v. Schwartz*, 678 P.2d 1000, 1008 (Colo.1984) ("Although we have held that conduct by a district attorney in retrying or re-filing charges against a defendant may, in unusual circumstances result in a denial of the particular defendant's due process right to fundamental fairness, the circumstances of this case do not justify judicial interference with executive discretion.") (footnote omitted); *People v. Aragon*, 643 P.2d 43, 47 (Colo.1982)("Whether it was through deliberate prosecutorial misconduct, overreaching, gross negligence, or simply through ineptitude and delay .... [t]he defendant suffered the inequities, indignities and abuse which the constitutional safeguards of due process and fundamental fairness are designed to protect against."); *People v. Abrahamsen*, 176 Colo. 52, 58, 489 P.2d 206, 209 (1971) ("We conclude that the methods employed by the district attorney to keep the prosecution of defendant alive, although procedurally within the law, in fact violated the due process requirement of fundamental fairness.").

¶ 32 We reverse the judgment dismissing this case, and we remand the case to the trial court to reinstate the charges against defendant. The court may then, in its discretion, consider and rule on the contentions—including the due process contention—that defendant raised in his mid-May 2012 motion to dismiss the second case and that the court has not already resolved.

JUDGE GRAHAM and JUDGE BERGER concur.